**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
                                    :
HOWARD STARKES, JR.,                :
                                    :   Civil Action No. 10-519 (MLC)
            Plaintiff,              :
                                    :
       v.                           :       O P I N I O N
                                    :
NICOLE MCGRATH, et al.,             :
                                    :
            Defendants.             :
                                    :
```

**COOPER, District Judge**

Plaintiff, who is currently confined, seeks to bring this action in forma pauperis. Plaintiff now provides an affidavit of indigency and an inmate account statement. Based on the affidavit of indigency, and the absence of three qualifying dismissals within 28 U.S.C. § ("Section") 1915(g), the Court will grant the application to proceed in forma pauperis pursuant to Section 1915(a), and order the Clerk of the Court to file the Complaint.

The Court — as Plaintiff is a prisoner and proceeding as an indigent — must review the Complaint, pursuant to Sections 1915(e)(2)(B) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. The Court will conclude that the Complaint should be dismissed.

**I.    BACKGROUND**

Plaintiff names as Defendants two individuals: (a) Nicole McGrath; and (b) Lisa Scheidermann. Clarifying that McGrath is a

"drug court prosecutor" and Scheidermann is a "drug court coordinator," Plaintiff alleges that these Defendants violated his civil rights because:

> [McGrath] den[ied] Plaintiff drug treatment calling him antisocial and behavior not acceptable for a rehabilitation program.  Rejection cannot be based on offense alone.  She places emphasis on Plaintiff's criminal history, ignoring his addiction, legally rejecting him without clinically having him evaluated.  Violating Plaintiff's Fourteenth Amendment rights, he is a suffering addict and cannot find mental illness treatment.
> . . .
> [Scheidermann] did not have [Plaintiff] evaluated clinically, as far as [his] state of mind, from the disease of addiction. [She] neglected and did not consider the need for help in [his] mental illness to solve this issue in treatment.

Docket Entry No. 1, at 4-5 (cites and abbreviations omitted).

Plaintiff seeks compensatory damages in the amount of $150,000 and punitive damages in the amount of $250,000.  See id. at 7.  Plaintiff summarizes his claims by stating that he is "being punished with incarceration instead of treatment."  Id.

**II.   STANDARDS FOR A SUA SPONTE DISMISSAL**

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them

in the light most favorable to the plaintiff." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). The standard for evaluating whether a complaint is "frivolous" is an objective one. See Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), in examining Federal Rule of Civil Procedure 8(a)(2), holds that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'". Id. at 1949 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). There are two principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

3

>alleged-but it has not "show[n]" -- "that the pleader is entitled to relief."

Iqbal, 129 S.Ct. at 1949-50 (cites omitted).

>The Court further explained that

>>a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausible give rise to an entitlement to relief.

Id. at 1950.

To avoid summary dismissal, a civil complaint must allege "sufficient factual matter" showing that a claim is facially plausible, thereby allowing a court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Id. at 1948. A plaintiff must demonstrate that the allegations of the complaint are plausible. See id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3.

A district court must conduct the two-part analysis set forth in Iqbal:

>First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S. Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.] In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As

4

> the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" Iqbal, [129 S. Ct. at 1949-50]. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

But the sufficiency of a pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007).

### III. SECTION 1983 ACTIONS

To state a claim for relief under § 1983, a plaintiff must allege (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed or caused by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

### IV. ANALYSIS

#### A.   Drug Court Program

Since Plaintiff is asserting claims against a prosecutor and coordinator of a "drug court," this Court analysis begins with an explanation as to what is a "drug court."

> Drug courts began in New Jersey in 1996 when Camden and Essex Superior Courts started accepting participants. These local projects evolved into well defined drug court programs that have paved the way for additional pilot program efforts. By 1999 additional programs were established in Mercer, Passaic and Union Counties. . . . In 1999, the Chief Justice asked the Conference

> of Criminal Presiding Judges to review the existing adult drug courts to determine whether drug courts were a "best practice" in the Criminal Division and the potential for expansion.  In May 2000, the Conference of Criminal Presiding Judges recommended drug courts as a "best practice" and in June of the same year the Judicial Council adopted drug courts as a "best practice" and called for a comprehensive statewide proposal. . . .  In December 2000 the Judiciary released a document entitled "Drug Courts: A Plan for Statewide Implementation" proposing statewide implementation of adult drug courts based on the success of the pilot initiatives.  On Sept. 6, 2001, Legislation L.2001, c.243 was signed by the Governor.  That law provided the Judiciary with funding to expand drug courts beyond the initial five courts.  The plan involved a three-phased process resulting in the establishment of a statewide drug court system.  New Jersey drug courts [are intended to] focus on substance-abusing criminal offenders who are charged with non-violent offenses and who do not have prior convictions for violent crimes.

<u>Adult Drug Court Programs</u>, http://www.judiciary.state.nj.us/drugcourt/index.htm.

New Jersey "drug courts" are courts that are a part of New Jersey Superior Court, where criminal proceedings are available for certain offenders.  <u>See</u> <u>Manual for Operation of Adult Drug Court is New Jersey</u>, at 1, http://www.state.nj.us/defender/Manual%20for%20Operation%20of%20Drug%20Courts.pdf ("Manual") ("Drug Courts are a highly specialized team process that function within the existing Superior Court structure of address nonviolent drug-related cases").  These courts are neither operated as health care providers nor permitted to re-qualify offenders into patients. "Drug courts" are courts, and they differ from the rest of New Jersey Superior Court only in the sense that a certain

narrow group of offenders indicted on non-violent crime charges are, upon intensive screening, permitted to enter pleas of guilt in exchange for sentences that include extensive treatment and a probation period (which encompasses reporting and monitoring requirements, residential treatment program, and community work) and render the participating offenders ineligible for early release.  See Manual at 9.  Moreover, strict guidelines apply to an offender's eligibility for proceedings before a "drug court," and certain groups of individuals are excluded, by operation of the relevant state law, from having their proceedings before "drug courts"; this exclusion is done on the basis of the nature of the offense and regardless of the offender's addiction or other personal attributes.  See Manual at 9-13.

   Since "drug courts" are, indeed, courts, the participants of "drug courts" have their firmly allocated roles.  Consequently, the prosecutors participating in the "drug court" proceedings are acting as advocates of the State just as if they were performing their duties in any other court.  See id. at 31.  Similarly, a "drug court" coordinator is an administrator performing duties analogous to those performed by the clerk of a court.  See id. at 32 (clarifying that coordinator is person who must "maintain responsibility for overall day to day operations of the drug court; function as the 'point person' for probation, the judge, the treatment providers and related agencies, support community mapping efforts by functioning as the primary liaison to the

7

community and by representing the program at all levels, county, state and national; maintain a connection with outside resources to bring new ideas to team members"). Simply put, neither the prosecutor nor the coordinator of any "drug court" is expected to act as a health care provider or even as a public defender, since each offender is assigned a public defender (or obtains paid counsel) for the purposes of any "drug court" proceedings or even for the purposes of being considered for such proceedings. See id. at 31-32 (providing definition of extensive duties of public defender representing offender seeking or having proceedings before "drug court").

### B.   Allegations Stated in the Complaint

Plaintiff presents allegations against Defendants in terms of denial of medical care. But the issue of denial of medical care is inapplicable to his eligibility (or lack thereof) for "drug court" trial. His pending proceedings are a criminal prosecution, not a health care program, and the fact of Plaintiff's committing certain crimes may indeed conclusively exclude Plaintiff from eligibility for "drug court" proceedings, regardless of his interest in obtaining treatment. Plaintiff's claims are just as invalid as if they were expressing his disappointment with the fact that his prosecution is to be held in state rather than federal court, or that he is to be tried as an adult rather than juvenile.

The claims against McGrath also are barred by prosecutorial immunity. "[A] state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit. Imbler v. Pachtman, 424 U.S. 409, 410 (1976). Thus, a prosecutor's presentation of evidence at a hearing is protected by absolute immunity. See Burns v. Reed, 500 U.S. 478, 492 (1991). Similarly, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).

Plaintiff's allegations against McGrath define McGrath's activities that fall within the scope of prosecutorial duties in initiating and pursuing a criminal prosecution. Therefore, his claims against McGrath must be dismissed for failure to state a claim and, in addition, because McGrath is subject to absolute immunity.

Plaintiff's claims against Scheidermann must be dismissed since Scheidermann, an administrative official, could not have violated Plaintiff's civil rights by denying him medical care, or not performing mental health evaluations since Scheidermann had no duty to perform any of these actions. Plaintiff simply makes bald allegations and states unwarranted legal conclusions against

Scheidermann; these assertions and legal conclusions, however, are divorced from reality.  Therefore, Plaintiff's allegations must be dismissed.  See Fowler, 578 F.3d at 210-11.

**V.     CONCLUSION**

The Complaint will be dismissed with prejudice.  The Court will issue an appropriate order and judgment.

                                                    s/ Mary L. Cooper
                                                  **MARY L. COOPER**
                                                  United States District Judge

Dated:  April 12, 2010